**KAZEROUNI LAW GROUP, APC**
David McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Nadir O. Ahmed, Esq. (SBN: 290810)
nadir@kazlg.com
2221 Camino del Rio S #101,
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
DANIEL FLORES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FLORES, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>UNITED PARCEL SERVICE, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendant(s). | Case No.: 8:25-cv-01534-FWS-ADS<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>1. FAILURE TO PAY WAGES [Cal. Lab. Code §§ 200-203]<br><br>2. FAILURE TO PAY OVERTIME [Cal. Lab. Code § 510]<br><br>3. MEAL BREAK VIOLATIONS [Cal. Lab. Code §§ 226.7(c), 512(a), 1198; IWC ORDER NO. 4-2001]<br><br>4. FAILURE TO PROVIDE REST BREAKS [Cal. Lab. Code §§ 226.7(c), 1198; IWC ORDER NO. 4-2001]9<br><br>5. FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS [Cal. Lab. Code 226]<br><br>6. FAILURE TO PRODUCE PERSONNEL RECORDS AND |

- 1 -

CLASS ACTION COMPLAINT

PAYROLL STATEMENTS [Cal. Lab. Code §1198.5]

7. FAILURE TO PAY ALL WAGES UPON TERMINATION/RESIGNATION [Cal. Lab. Code §§ 201-203]

8. UNFAIR BUSINESS PRACTICES AND UNFAIR COMPETITION [Cal. Bus. & Prof. Code §§ 17200. et seq.]

**[JURY TRIAL DEMANDED]**

CLASS ACTION COMPLAINT

## I.  INTRODUCTION

1.     Plaintiff DANIEL FLORES ("FLORES" or "Plaintiff") brings this Class Action Complaint to challenge the unlawful employment practices of UNITED PARCEL SERVICE, INC. ("UPS" or "Defendant") with regard to Defendant's mischaracterization of employees as exempt, failure to pay wages, failure to pay overtime, failure to provide meal breaks and rest periods, inaccurate wage statements, and unfair business practices.

2.     Based on such unlawful employment practices, Plaintiff and others similarly situated were deprived of meal breaks, rest periods, wages, and suffered from loss of income.

3.     Defendant's unlawful employment practices include violations of: 1) Failure to provide meal breaks in violation of Labor Code §§ 226.7(c), 512(a), 1198 and IWC Order No. 4-2001; 2) Failure to provide Rest breaks  in violation of Labor Code §§ 226.7(c), 1198 and IWC Order No. 4-2001; 3) Failure to pay Overtime in violation of Labor Code §§ 510, 1194; 4) Failure to pay wages in violation of Labor Code §200; 5) Failure to provide accurate wage statements in violation of Labor Code §226(a); 6) Failure to pay all wages upon termination/resignation in violation of Labor Code §§ 201-203; 7) Failure to produce personnel records and payroll statements in violation of Labor Code §§ 1198.5, 226; 8) Unfair Business Practices in violation of Bus. & Prof. Code § 17200 *et seq*.

4.     Plaintiff alleges as follows based upon information and belief, with the exception of those allegations that pertain to Plaintiff, which Plaintiff alleges upon personal knowledge as to himself and his own acts and experiences.

5.     Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of the named Defendant.

## II.  PARTIES

6.      Plaintiff is, and at all times mentioned herein was, a citizen and resident of the County of Orange, in the State of California.

7.      Upon information and belief, Defendant UPS is an Ohio corporation with a principal place of business in Atlanta, Georgia.  UPS conducts business and is an employer in the State of California. UPS is a company which facilitates shipping and receiving and supply chain management.

8.      Defendant, DOES: Plaintiff is ignorant of the names and capacities of those defendants sued herein as DOES 1 – 100, inclusive, and for that reason has sued such defendants by such fictitious names.  When the true names and capacities of these defendants have been ascertained, Plaintiff will amend this Complaint accordingly.

## III.  JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Defendants because Defendants conduct business in the State of California and have engaged in conduct—including the unlawful employment practice described herein—that impacts persons in the State of California.

10.      Jurisdiction is proper under 28 U.S.C. § 1332(d) ("CAFA"), which provides for original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from the defendant, and in which the matter in controversy exceeds, in the aggregate, the sum of $5 million, exclusive of interest and costs.

11.      The total claims of individual class members in this action are well in excess of $5 million, as Defendant's unlawful and deceptive practices have caused significant financial harm to Plaintiff and the putative class. Statutory and compensatory damages, as well as restitution and other relief, further substantiate the

- 4 -

aggregate amount in controversy under 28 U.S.C. § 1332(d)(2).

12.    Further, on information and belief, Defendant's illegal compensation practices have impacted thousands of employees across California, who were similarly undercompensated by Defendant. Defendant's uniform conduct satisfies the requirements of 28 U.S.C. § 1332(d)(2), (5).

13.    Based on the belief that thousands of individuals in California would be included in any certified class, the numerosity requirement, exceeding forty members, is satisfied, pursuant to 28 U.S.C. § 1332(d)(5)(B).

14.    Plaintiff and most of the members of the putative class are citizens of California, and Defendant is a citizen of Ohio and Georgia. Therefore, diversity of citizenship exists under CAFA as defined by 28 U.S.C. § 1332(d)(2)(A).

15.    Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b)(2) because Plaintiff resides in this judicial district of California, a substantial part of the events giving rise to Plaintiff's causes of action against Defendant occurred within the Central District of California, and Defendant regularly conducts business in the State of California and County of Los Angeles.

## IV.  FACTUAL ALLEGATIONS

### Employment and Pay Structure

16.    Plaintiff Flores began employment with Defendant UPS on August 11, 2014. Flores worked at the Ontario Air Hub in Ontario, California. Flores held the position of Hub Operations Supervisor from March 2022 to March 3, 2023.

17.    UPS classified Flores as an exempt, salaried employee. This classification was incorrect. UPS utilized a hybrid pay structure. UPS guaranteed Flores an annual salary of approximately $31,000. This equates to $2,583.33 per month. This guaranteed amount falls below the threshold required by California

CLASS ACTION COMPLAINT

Labor Code Section 515. The law requires a monthly salary twice the state minimum wage for full-time employment. Flores earned less than this threshold.

18.    UPS paid Flores hourly wages for certain hours. Flores received between $19.00 and $22.00 per hour for work exceeding 27.5 hours per week. The effective hourly rate for Flores for the first 27.5 hours was approximately $21.68.

## Unpaid Overtime During Holiday Peak Season

19.    Flores worked a Holiday Peak Season schedule from November 27, 2022, through December 24, 2022. Flores worked a standard schedule of Sunday through Thursday. During this period, Flores worked 10 hours per day. Flores worked these 10-hour shifts for 20 specific workdays. California law entitles Flores to overtime pay for hours worked beyond eight in a day. On each of the specific dates listed below, Flores worked two hours of overtime.

20.    UPS paid Flores his standard straight-time rate of approximately $21.68 or no additional compensation for these hours. UPS should have paid Flores an overtime rate of approximately $32.52 per hour for these excess hours.

21.    UPS failed to pay overtime wages on November 27, 28, 29, 30, and December 1, 2022. On these dates, Flores worked 10 hours each day, but UPS paid zero overtime hours.

22.    UPS failed to pay overtime wages on December 4, 5, 6, 7, and 8, 2022. On these dates, Flores worked 10 hours each day, but UPS paid zero overtime hours.

23.    UPS failed to pay overtime wages on December 11, 12, 13, 14, and 15, 2022. On these dates, Flores worked 10 hours each day, but UPS paid zero overtime hours.

24.    UPS failed to pay overtime wages on December 18, 19, 20, 21, and 22, 2022. On these dates, Flores worked 10 hours each day, but UPS paid zero overtime hours.

CLASS ACTION COMPLAINT

**Meal and Rest Break Violations**

25.    UPS restricted its corporate meal and rest break policies to employees classified as non-exempt. UPS classified Flores as an exempt employee. Consequently, UPS excluded Flores from the official break policy. UPS maintained no policy or procedure to authorize meal and rest periods for Flores. UPS provided no mechanism for Flores to schedule or record breaks. This lack of policy resulted in the systematic denial of breaks.

26.    UPS combined this policy exclusion with specific operational practices that prevented breaks. UPS routinely understaffed shift operations. Flores served as the sole supervisor on duty during active operations. UPS provided no relief supervisor to cover the duties assigned to Flores. UPS required Flores to remain on the floor. Flores could not leave the premises or cease work duties without halting operations. Consequently, Flores worked without a single off-duty meal or rest break from July 14, 2022, through March 3, 2023.

27.    Flores worked a standard schedule of Sunday through Thursday. On the dates listed below, Flores worked approximately seven hours per day. California law mandated one 30-minute unpaid meal period and two 10-minute paid rest breaks for each of these shifts. UPS failed to provide these breaks. UPS owes Flores one hour of premium pay at his regular rate of approximately $21.68 per hour for the missed meal period on each date. UPS owes Flores one hour of premium pay at his regular rate of approximately $21.68 per hour for the missed rest periods on each date.

28.    The specific dates of these violations during July 2022 are July 14, 17, 18, 19, 20, 21, 24, 25, 26, 27, 28, and 31.

29.    The specific dates of these violations during August 2022 are August 1, 2, 3, 4, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25, 28, 29, 30, and 31.

30.    The specific dates of these violations during September 2022 are September 1, 4, 5, 6, 7, 8, 11, 12, 13, 14, 15, 18, 19, 20, 21, 22, 25, 26, 27, 28, and 29.

CLASS ACTION COMPLAINT

31.     The specific dates of these violations during October 2022 are October 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 23, 24, 25, 26, 27, 30, and 31.

32.     The specific dates of these violations during November 2022 are November 1, 2, 3, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 20, 21, 22, 23, and 24.

33.     The specific dates of these violations during December 2022 are December 25, 26, 27, 28, and 29.

34.     The specific dates of these violations during January 2023 are January 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 29, 30, and 31.

35.     The specific dates of these violations during February 2023 are February 1, 2, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 26, 27, and 28.

36.     The specific dates of these violations during March 2023 are March 1 and 2.

37.     On the dates listed below during the Holiday Peak Season, Flores worked ten hours per day. California law mandated two 10-minute paid rest breaks for each of these shifts. UPS failed to provide these breaks. UPS owes Flores one hour of premium pay at his regular rate for the missed rest periods on each of these dates.

38.     The specific dates of these violations during November 2022 are November 27, 28, 29, and 30.

39.     The specific dates of these violations during December 2022 are December 1, 4, 5, 6, 7, 8, 11, 12, 13, 14, 15, 18, 19, 20, 21, and 22.

40.     In total, UPS denied Flores mandated breaks on approximately 160 separate workdays. These violations were not isolated incidents. They resulted from the corporate policy excluding misclassified supervisors from break procedures.

### Inaccurate Wage Statements

41.     UPS issued wage statements to Flores on a semi-monthly basis. UPS issued these statements systematically throughout the employment of Flores. On

occasions he did not receive a wage statement.  Regardless, every wage statement issued by UPS to Flores from March 2022 through March 3, 2023, failed to comply with California Labor Code Section 226(a).

42.     UPS utilized a specific payroll format for Flores that listed his compensation solely as a lump sum salary. This format was factually inaccurate. UPS actually paid Flores based on a hybrid structure that varied based on hours worked. Consequently, every wage statement failed to accurately list the total hours worked by Flores. Every wage statement failed to list the applicable hourly rates in effect. Every wage statement failed to list the gross wages earned specifically attributed to those hourly rates.

43.     Flores received a wage statement for the pay period covering work performed from March 2022 through March 3, 2023. During this period, Flores worked his standard schedule of Sunday through Thursday. The wage statement provided by UPS listed only a salary amount. The wage statement failed to list the total hours worked. The wage statement failed to list the effective hourly rate of approximately $21.68.

44.     Flores received a wage statement for the pay period covering the work performed between November 27, 2022, and December 10, 2022. During this pay period, Flores worked 20 overtime hours. The wage statement provided by UPS continued to list only a salary amount. The wage statement failed to list the 20 overtime hours. The wage statement failed to list the applicable overtime hourly rate. The wage statement failed to list the gross wages earned for these specific overtime hours.

45.     These omissions were knowing and intentional. UPS possessed the data showing the actual hours worked by Flores. However, UPS knowingly programmed its payroll system to suppress this data on the wage statements. UPS utilized this "salary only" format to conceal the fact that Flores was actually an hourly employee misclassified as exempt. This practice prevented Flores from determining his actual

CLASS ACTION COMPLAINT

wages earned without engaging in complex mathematical reconstructions.

46.     UPS further demonstrated that this concealment was intentional by refusing to provide Flores with his employment records. On August 2, 2024, Flores submitted a written request to UPS seeking a copy of his personnel file and payroll records pursuant to California Labor Code Section 1198.5. Flores sent this request to the UPS Human Resources Department. UPS received this request. The statutory deadline for UPS to produce these records expired 30 days after receipt. UPS failed to produce the requested personnel records and payroll files within the statutory timeline. This failure prevented Flores from verifying his employment history and wage calculations prior to litigation.

47.     When Flores subsequently requested his payroll and personnel file to verify his wages, UPS suppressed the records. UPS refused to produce the data that would reveal the discrepancy between the hours Flores worked and the salary listed on the statements. This refusal to provide transparency confirms that the deficiencies in the wage statements were part of a calculated strategy to hide the wage theft, rather than a clerical error.

### Failure to Pay All Wages Upon Resignation

48.     Flores resigned from his employment with UPS on March 3, 2023. Flores provided UPS with notice of his resignation in advance of his final day. Under California Labor Code Section 202, all wages earned and unpaid became due and payable at the time of quitting on March 3, 2023.

49.     On March 3, 2023, UPS failed to pay Flores the unpaid overtime wages earned during the Holiday Peak Season of 2022. On March 3, 2023, UPS failed to pay Flores the missed meal and rest break premiums for the 160 workdays identified above. UPS knew these amounts were due because it tracked the hours worked by Flores and enforced the policy prohibiting breaks. UPS willfully withheld these final wages as part of its uniform policy of misclassifying Supervisors.

- 10 -

**Failure to Produce Personnel Records**

50. On August 2, 2024, Flores submitted a written request to UPS seeking a copy of his personnel file and payroll records pursuant to California Labor Code Section 1198.5. Flores sent this request to the UPS Human Resources Department. UPS received this request. The statutory deadline for UPS to produce these records expired 30 days after receipt. UPS failed to produce the requested personnel records and payroll files within the statutory timeline. This failure prevented Flores from verifying his employment history and wage calculations prior to litigation.

## V.  CLASS ALLEGATIONS REGARDING SUPERVISORS

51. Upon information and belief, UPS has hired a multitude of employees as supervisors ("SUPERVISORS"), each of whom were treated in the same manner as FLORES, as described above.

52. Upon information and belief, UPS applied uniform policies to all employees holding the title Supervisor. UPS misclassified all Supervisors as exempt despite paying a hybrid hourly wage. UPS paid Supervisors a guaranteed salary below the California minimum threshold for exemption. UPS set staffing levels that left Supervisors as the sole management presence during shifts. This staffing policy prevented all Supervisors from taking off-duty breaks. Supervisors regularly worked shifts exceeding eight hours during peak volumes in November and December. UPS failed to pay overtime premiums to the Class for these specific excess hours.

53. Upon information and belief, UPS applied uniform policies to all employees holding the title Supervisor. UPS misclassified all Supervisors as exempt despite paying a hybrid hourly wage. UPS restricted its corporate break policies to non-exempt employees. UPS excluded the Class from these protections based on the misclassification. UPS maintained no policy to provide meal or rest breaks to the Class. UPS provided no mechanism for the Class to schedule or record breaks. UPS

CLASS ACTION COMPLAINT

KAZEROUNI LAW GROUP, APC

set staffing levels that left Supervisors as the sole management presence during shifts. This staffing policy reinforced the exclusion from the break policy. Supervisors regularly worked shifts exceeding eight hours during peak volumes in November and December. UPS failed to pay overtime premiums to the Class for these specific excess hours.

54.     Upon information and belief, UPS issued wage statements to the Class that contained the same systematic defects found in the statements of Flores. UPS classified all Class members as exempt. UPS knowingly programmed its payroll system to list only a lump sum salary figure on the wage statements of the Class. UPS suppressed the hourly rates, total hours, and overtime hours actually worked by the Class. This intentional omission caused injury to the Class by concealing the true amount of wages earned and the hybrid nature of their pay.

55.     Upon information and belief, UPS applied a uniform policy of failing to pay accrued overtime and break premiums to Class members upon their separation from employment. Whether a Class member resigned or was terminated, UPS calculated their final pay based on the incorrect exempt salary rate. UPS willfully withheld the overtime wages and break premiums owed to the Class at the time of separation.

56.     The systematic policies of UPS regarding the misclassification of Supervisors have been in effect throughout the employment of Flores. Certain violations alleged herein occurred outside the three-year statute of limitations for damages under the Labor Code but within the four-year statute of limitations for restitution under the Unfair Competition Law.

## VI.  CLASS ALLEGATIONS

57.     Plaintiff brings this action, on behalf of himself and all others similarly situated.

- 12 -

**CLASS DEFINITION**

58.     Plaintiff represents, and is a member of, the Class, consisting of:

      i.      All employees of Defendant who are or were employed by Defendant in California as Supervisors, who were designated by Defendant as exempt from overtime compensation, and whose annualized compensation during any workweek within the Class Period was less than twice the applicable California minimum wage for full-time employment as set forth in the Industrial Welfare Commission Wage Orders and California Labor Code § 515.

59.     Defendants and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes Class members number in the hundreds of thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

**CLASS PERIOD**

60.     The "Class Period" means:

      ii.     Four (4) years prior to the initial filing of this complaint.

61.     Plaintiffs reserve the right to redefine the Classes, and to add and redefine any additional subclasses as appropriate based on discovery and specific theories of liability.

62.     There is a well-defined community of interest in the litigation, the proposed class is easily ascertainable, and Plaintiff is a proper representative of the Class.

**ASCERTAINABILITY:**

63.     Class members are readily ascertainable from Defendants' own records

CLASS ACTION COMPLAINT

and/or Defendants' agents' records.

## NUMEROSITY:

64.     The potential Class members as defined are so numerous and so diversely located throughout California, that joinder of all the members of the Class impracticable. Class members are dispersed throughout California. Joinder of all members of the proposed class is therefore not practicable

## COMMONALITY:

65.     There are questions of law and fact common to Plaintiff and the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

    i.    Whether Defendant's conduct violated Labor Code §§ 226.7(c), 512(a), 1198 and IWC Order No. 4-2001 when it failed to provide meal breaks to the Plaintiff and the Class;

    i.    Whether Defendant's conduct violated Labor Code §§ 226.7(c), 1198 and IWC Order No. 4-2001 when it failed to provide rest breaks to the Plaintiff and the Class;

    ii.    Whether Defendant's conduct violated Labor Code §§ 510, 1194 when it failed to pay overtime pay to the Plaintiff and the Class;

    iii.    Whether Defendant's conduct violated Labor Code §200 when it failed to pay wages to the Plaintiff and the Class;

    iv.    Whether Defendant's conduct violated Labor Code §226(a) when it failed to provide accurate wage statements to the Plaintiff and the Class;

    v.    Whether Defendant's conduct violated Labor Code §226, when it failed to produce personnel records and payroll statements to the Plaintiff and the Class;

CLASS ACTION COMPLAINT

vi.   Whether Defendant's conduct violated Labor Code §§ 201-203 when it failed to pay all wages upon termination/resignation to the Plaintiff and the Class;

vii.   Whether Defendants' conduct violates Business and Professions Code § 17200, et seq. when they engaged in unlawful employment activities and adopted unlawful employment policies.

**TYPICALITY:**

66.    Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is a member of the Class that Plaintiff seeks to represent. Similar to members of the Class, Plaintiff has suffered from the Defendant's unlawful employment practices and policies. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent members of the Class. Defendants have no defenses unique to the Plaintiff.

**ADEQUACY OF REPRESENTATION:**

67.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests do not conflict with those of Class members. Plaintiff has retained counsel experienced in employment law, and wage and hour law, including class actions. Plaintiff has no adverse or antagonistic interest to those in the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and proposed Class.

**SUPERIORITY OF CLASS ACTION:**

68.    A Class Action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is

- 15 -

CLASS ACTION COMPLAINT

not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Plaintiff and Class members have suffered or may suffer loss in the future by reason of Defendants' unlawful policies and/or practices. Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Certifying this case as a class action is superior because it allows for efficient relief to Class members, and will thereby effectuate California's strong public policy of protecting the California public from violations of its laws.

69. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

70. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous putative Class members who will be unable to enforce individual claims of this size on their own, and by Defendants' competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

71. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons or a revised time period as warranted as facts are learned in further investigation and discovery.

CLASS ACTION COMPLAINT

## VII.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## FAILURE TO PAY WAGES

## [Cal. Lab. Code §§ 200-203]

72.   Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

73.   Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

74.   "Wages" includes all amounts for labor performed by employees of every description.  Cal. Lab. Code § 200(a).

75.   "Labor" includes labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement. . . . Cal. Lab. Code § 200(b).

76.   To establish a claim for failure to pay wages, Plaintiff must prove: (1) He performed work for Defendant, (2) Defendant owes him wages under the terms of his employment, and (3) the amount of the wages owed.

77.   Additionally, the Plaintiffs are entitled to attorneys' fees and costs pursuant to Labor Code § 218.5 for bringing an action for nonpayment of wages.

78.   SUPERVISORS at UPS were not paid their full agreed-upon salary/wages, and were paid for fewer hours than actually worked.

79.   SUPERVISORS regularly worked more than 8 hours in a day, or more than 40 hours in a workweek. However, they were not compensated with overtime wages.

80.   SUPERVISORS were not provided their final pay after resignation or termination.

81.   Plaintiff and the class was damaged by not receiving compensation which Plaintiff should have received.  Plaintiff is entitled to receive compensation, together with pre-judgment interest, attorney's fees and costs of suit.

CLASS ACTION COMPLAINT

82.     As such, UPS is liable for violating Cal. Lab. Code §§ 200-203 for nonpayment of wages. UPS is liable for lost wages as a result of the Defendant's failure to pay wages and or commissions. Additionally, the Defendant is liable for Plaintiff and the Class's attorneys fees and costs.

83.     Plaintiff also requests relief as described below.

## SECOND CAUSE OF ACTION

## FAILURE TO PAY OVERTIME

## [Cal. Lab. Code §§ 510, 1194]

84.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

85.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

86.     Labor Code §510 provides that any work done by an employee in excess of 8 hours in a single workday, or more than 40 hours in a workweek, must be compensated at a rate of no less than one and one-half times the employee's regular rate of pay.  A minimum of twice the employee's regular rate of pay is owed for work in excess of 12 hours in 1 day.

87.     An employee receiving less than legal overtime compensation is entitled to recover in a civil action the unpaid balance of the full amount of this overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

88.     SUPERVISORS regularly worked in excess of 8 hours in a single workday, and more than 40 hours in a workweek. However, SUPRVISORS were not given overtime pay.

89.     UPS is liable violating Labor Code §§ 510, 1194 for failure to pay overtime pay.  UPS is liable for lost wages as a result of the Defendant's failure to pay minimum wage.  Additionally, the Defendant is liable for Plaintiff and the Class's attorney's fees and costs.

CLASS ACTION COMPLAINT

90. Plaintiff also requests relief as described below.

## THIRD CAUSE OF ACTION

## FAILURE TO PROVIDE MEAL BREAKS IN VIOLATION OF LABOR CODE §§ 226.7(C), 512(A), 1198 AND IWC ORDER NO. 4-2001

91. Plaintiff FLORES realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

92. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

93. Meal periods of at least 30 minutes must ordinarily be provided within the first 5 hours of an employee's shift. See Labor Code §512(a)–(b) (IWC may authorize 6-hour period). An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes. Unless the employee is relieved of all duty during a 30-minute meal period, the meal period is "on duty" and counted as time worked. (See *Brinker Restaurant Corp. v Superior Court* (2012) 53 Cal.4th 1004.)

94. Employers that fail to provide an employee a meal period must pay the employee 1 hour's pay at the regular rate of pay for each day that any number of meal periods is not provided. Furthermore, violations of any wage order provision subject employers to penalties of $50 for each employee per pay period for initial violations and $100 for subsequent violations (see, *e.g.,* Lab. Code §§558, 1199; Wage Order No. 4–2001, §20 (8 Cal Code Regs §11040)).

95. Here, UPS did not provide any meal breaks to its SUPERVISORS. The Defendant did not have a policy or procedure which allowed the SUPERVISORS to take meal breaks during their workday.

96. As such, UPS is liable for violating Labor Code §§ 226.7(c), 512(a), 1198 and IWC order no. 4-2001 for failing to provide meal breaks. UPS is liable for damages in amount of one (1) hour of additional pay at the regular rate of

compensation for each workday that meal periods were not provided.

97.    Plaintiff also requests relief as described below.

## FOURTH CAUSE OF ACTION

## FAILURE TO PROVIDE REST BREAKS  IN VIOLATION OF LABOR CODE §§ 226.7(c), 1198 AND IWC ORDER NO. 4-2001

98.    Plaintiff FLORES realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

99.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

100.    Employees are entitled to 10-minute net rest periods for every 4 hours of work or major fraction thereof, to be taken in the middle of each 4-hour period as is practical.  Employees must be authorized and permitted to take 10 minutes' rest for shifts from 3.5 to 6 hours in length; 20 minutes for shifts of more than 6 hours up to 10 hours; 30 minutes for shifts of more than 10 hours up to 14 hours; and so on. *Brinker Restaurant Corp. v Superior Court* (2012) 53 Cal.4th 1004, 1029 (restaurant employees establish liability if employer failed to authorize and permit a second rest break for employees working shifts longer than 6 but shorter than 8 hours, but not for failure to provide rest period before meal period). No employer may require an employee to work during rest periods. Rest periods are counted as time worked. Wage Order Nos. 1–2001—16–2001, §§11–12(A) (8 Cal Code Regs §§11010–11160, §§11–12(A)).

101.    If an employer fails to provide an employee rest breaks in accordance with an applicable wage order, it must pay the employee 1 hour of pay at the employee's regular rate of pay for each workday that one or more rest periods are not provided.  Furthermore, violations of any wage order provision subject employers to penalties of $50 for each employee per pay period for initial violations and $100 for subsequent violations (see, *e.g.,* Lab. Code §§558, 1199; Wage Order No. 4–2001,

- 20 -

CLASS ACTION COMPLAINT

§20 (8 Cal Code Regs §11040)).

102.   Here, UPS did not provide any rest periods to its SUPERVISORS. The Defendant did not have a policy or procedure which allowed the SUPERVISORS to take rest breaks during their workday.

103.   As such, UPS is liable for violating Labor Code §§ 226.7(c), 1198 and IWC order no. 4-2001 for failing to provide rest breaks.  UPS is liable for damages in amount of one (1) hour of additional pay at the regular rate of compensation for each workday that rest breaks were not provided.

104.   Plaintiff also requests relief as described below.

## FIFTH CAUSE OF ACTION
## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS
### [Cal. Lab. Code § 226]

105.   Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

106.   Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

107.   Labor Code § 226 requires an employer to furnish its employees with an accurate itemized statement in writing showing, among other things: 1) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual; 2) total hours worked by each respective individual; 3) gross wages earned; 4) net wages earned; 5) all deductions; 6) inclusive dates of the period for which the employee is paid; 7) the name of the employee and an employee identification or social security number; and 8) the name and address of the legal entity that is the employer.

108.   Plaintiff and the Class have suffered injury as a result of a knowing and intentional failure by UPS to comply with Labor Code § 226(a). The uniform "salary only" format used by UPS prevented Plaintiff and the Class from determining the total

hours worked, the applicable hourly rates, and whether they were paid for all overtime hours earned, without engaging in complex mathematical reconstructions.

109. UPS provided SUPERVISORS with wage statements that were systematically inaccurate. The wage statements did not reflect 1) the total hours that SUPERVISORS had worked in that pay period; 2) all applicable hourly rates in effect during the pay period; and 3) SUPERVISORS' actual gross wages earned including overtime.

110. UPS is liable for violating Labor Code § 226 for failing to provide accurate itemized wage statements to employees. Plaintiff seeks actual damages pursuant to Labor Code § 226(e) and injunctive relief. Additionally, the Defendant is liable for Plaintiff and the Class's attorneys' fees and costs.

111. Plaintiff also requests relief as described below.

## SIXTH CAUSE OF ACTION

### FAILURE TO PRODUCE PERSONNEL RECORDS AND PAYROLL STATEMENTS

### [Cal. Lab. Code § 1198.5]

112. Plaintiff FLORES realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

113. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

114. Labor Code § 1198.5 governs employee rights to inspect and copy personnel records. It provides that every current and former employee has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance. Employers must make records available and provide a copy no later than 30 calendar days from the date the employer receives a written request from a current or former employee. The penalty for noncompliance is $750. An employee may also seek injunctive relief and request attorney fees and

costs. Lab. Code § 1198.5(k)–(l).

115. Here, FLORES submitted a written request to the UPS Human Resources Department on August 2, 2024, seeking his personnel file and payroll records. UPS received this request.

116. UPS failed to produce these documents within the 30-day statutory deadline.

117. Therefore, Plaintiff and the Class are entitled to penalties for UPS's failure to produce Plaintiff's and the Class's employment records. Additionally, the Defendant is liable for Plaintiff's attorneys' fees and costs.

118. Plaintiff also requests relief as described below.

## SEVENTH CAUSE OF ACTION

## FAILURE TO PAY ALL WAGES UPON TERMINATION/RESIGNATION

## [Cal. Lab. Code §§ 201-203]

119. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

120. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

121. Under California Labor Code Section 202, if an employee resigns, wages become due and payable not later than 72 hours thereafter, or at the time of quitting if the employee gave 72 hours' notice.

122. A court must impose a civil "waiting time" penalty of up to 30 days of pay for the employer's willful failure to pay wages due a quitting employee. Labor Code § 203.

123. Here, Plaintiff Flores resigned his employment on March 3, 2023. He provided notice in advance.

124. On the date of his resignation, UPS failed to pay Flores the overtime wages earned during the Holiday Peak Season of 2022 and the accrued meal and rest

CLASS ACTION COMPLAINT

KAZEROUNI LAW GROUP, APC

break premiums for the 160 workdays identified herein.

125. UPS's failure to pay these wages was willful. UPS knew Flores worked these hours and knew it prohibited breaks, yet calculated his final pay based on a misclassified salary rate.

126. UPS is liable for violating Cal. Lab. Code §§ 202-203. UPS is liable for lost wages, waiting time penalties, and for Plaintiff and the Class's attorneys' fees and costs.

127. Plaintiff also requests relief as described below.

## EIGHTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES AND UNFAIR COMPETITION

### [Cal. Bus. & Prof. Code §§ 17200. *et seq*.]

128. Plaintiff FLORES realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

129. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

130. Business and Professions Code § 17200 prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

131. Business and Professions Code § 17204 allows "any person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the Unfair Competition Law.

132. California's Unfair Competition Law (UCL) prohibits businesses from engaging in unfair competition. Unfair competition is defined to include any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Bus. & Prof. Code, § 17204. A business act is unlawful under section 17200 if it violates any other law. *Lazar v. Hertz Corp.* (1999) 69 Cal. App.4th 1494, 1505.

133. The UCL scope is intentionally broad, thus allowing courts maximum

CLASS ACTION COMPLAINT

discretion to prohibit new schemes to defraud. *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 534. By defining unfair competition to include any unlawful business act or practice, the unfair competition law permits violations of other laws to be treated as unfair competition that is independently actionable. *In re Tobacco Cases II*, 41 Cal. 4th 1257, 1258 (2007).

134. Over the duration of The Plaintiff's employment with Defendants, Defendants have committed unlawful, unfair, and/or fraudulent business acts and practices as defined by Business and Professions Code § 17200 by failing to pay wages, failing to provide meal and rest breaks, failing to pay overtime, failing to furnish timely and accurate wage statements, failing to produce employee records, and failing to pay wages upon termination/resignation in violation of state law.

135. Throughout the course of the Plaintiff's and the Class's employment, Defendants, its agent and employees committed acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein. Defendants' conduct as herein alleged has damaged the Plaintiffs and the Class by wrongfully denying their wages, benefits and equity, and therefore was substantially injurious to the Plaintiffs and the Class.

136. The above-described unlawful actions of Defendants constitutes false, unfair, fraudulent and/or deceptive business practices, within the meaning of Business and Professions Code § 17200, *et seq*.

137. As a result of their unlawful acts, Defendants have reaped unfair benefits and illegal profits at the expense of the Plaintiffs and the Class. Defendants should be caused to specifically perform its obligations, and made to disgorge these ill-gotten gains and pay restitution to Plaintiff including but not limited to restitution of all unpaid wages, plus interest, as well as attorneys' fees and costs.

138. Plaintiff and the Class lack an adequate remedy at law because monetary damages under the Labor Code do not provide complete relief for Defendant's ongoing and future unfair business practices, and legal remedies may not be available

CLASS ACTION COMPLAINT

for all periods of violation or all forms of restitution sought.

139.    Plaintiff Flores lacks an adequate remedy at law for a specific portion of the damages sought. The statutory claims for unpaid wages and overtime under the California Labor Code are subject to a three-year statute of limitations. The Unfair Competition Law (UCL) is subject to a four-year statute of limitations.

140.    Flores suffered wage theft and misclassification beginning in March 2022. However, the systematic policies of UPS regarding the misclassification of Supervisors have been in effect throughout his employment. To the extent that specific violations occurred outside the three-year limitations period of the Labor Code but within the four-year limitations period of the UCL, Flores has no legal remedy to recover those specific unpaid wages.

141.    Furthermore, the legal remedies available under the Labor Code do not provide for injunctive relief to stop the ongoing unfair business practice of misclassifying Supervisors. Flores seeks injunctive relief to compel UPS to correct the classification of the position, a remedy not fully available through monetary damages alone.

142.    Therefore, equitable relief under the UCL is necessary to provide complete relief for the full scope of the injury.

143.    Plaintiff also requests relief as described below.

## VIII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court enter an Order in favor Plaintiff and the Class against Defendant, providing Plaintiff and the Class members the following relief:

i.    Certifying this action as a class action;

ii.    Appointing Plaintiff to serve as the Class Representative;

iii.    Appointing Plaintiff's attorneys as Class Counsel;

- 26 -

CLASS ACTION COMPLAINT

iv.   A judgment or order declaring that Defendants' wrongful conduct be adjudged and decreed to violate the labor law statutes asserted herein;

v.   That the Court declare that UPS's employment policies and/or practices of failing to pay wages and or commissions violates California Labor Code §200;

vi.   That the Court declare that UPS's employment policies and/or practices of failing to pay overtime violates California Labor Code § 510;

vii.   That the Court declare that UPS's policies and/or practices of failing to provide meal periods violates California Labor Code §§ 226.7 and 512 Wage Orders 1-2001 - 17-2001 by failing to provide her a meal period of at least one half hour in which they were relieved of all duties for every five hours of work;

viii.   That the Court declare that UPS's policies and/or practices of failing to provide rest periods violates California Labor Code § 226.7 and Wage Orders 1-2001 - 17-2001 by failing to provide her a rest period of at least ten minutes for every four hours of work or major portion thereof;

ix.   That the Court declare that UPS's policies and/or practices of failing to furnish accurate itemized wage statements violates California Labor Code § 226;

x.   That the Court declare that UPS's policies and/or practices of failing to produce personnel records and payroll statements violates California Labor Code §1198.5.

xi.   That the Court declare that UPS has violated California Labor Code §§ 201-203 for willful failure to pay compensation at the time of termination/resignation of employment, resulting in unpaid waiting time penalties;

xii.   That the Court declare that UPS's above-mentioned policies and/or practices violate the UCL (Cal. Bus. & Prof. Code §§ 17200-17208).

xiii. An award to Plaintiff and the Class damages in amount of unpaid wages, interest, and penalties including but not limited to penalties pursuant to California Labor Code §210, subject to proof at trial;

xiv. An award to Plaintiff and the Class damages in amount of unpaid

- 27 -

CLASS ACTION COMPLAINT

overtime compensation, interest, and penalties subject to proof at trial;

xv.  An award to the Plaintiff and the Class damages in amount of one (1) hour of additional pay at the regular rate of compensation for each workday that meal periods were not provided, pursuant to California Labor Code § 226.7 and Wage Orders 1–2001 and interest thereon;

xvi. An award to Plaintiff and the Class damages in amount of one (1) hour of additional pay at the regular rate of compensation for each workday that rest periods were not provided, pursuant to California Labor Code § 226.7 and Wage Orders 1–2001 and interest thereon;

xvii.       An award of actual damages to Plaintiff and the Class for Defendant's failure to provide accurate itemized wage statements, pursuant to California Labor Code § 226(e);

xviii.       An award of payments due to Plaintiff and the Class pursuant to Defendant's violation of California Labor Code §1198.5;

xix.  An award of payments due to Plaintiff and the Class for waiting time penalties pursuant to California Labor Code § 203;

xx.  Interest accrued to date under the California Labor Code, including but not limited to Sections 226.7, 510, and 2802.

xxi. For an order that UPS make restitution to the Plaintiff and the Class for their unlawful business practices as described herein pursuant to California Business and Professions Code §§ 17200-12205 and California Labor Code § 1199.

xxii.       An award of general and compensatory damages to Plaintiff and the Class in an amount to be determined at trial;

xxiii.       An award of general and special damages to Plaintiff and the Class in an amount to be determined at trial;

xxiv.        An award of exemplary damages or punitive damages pursuant to Civil Code § 3294 and as otherwise allowed by law in an amount to be determined at trial;

CLASS ACTION COMPLAINT

xxv. An award of restitution damages to Plaintiff and the Class in an amount to be determined at trial;

xxvi.      That Plaintiff and each of the other members of the Class recover the amounts by which Defendants have been unjustly enriched;

xxvii.      An award of penalties pursuant to Labor Code §§ 558, 1199.

xxviii.      An award of reasonable attorneys' fees and costs, pursuant to California Civil Procedure § 1021.5, California Labor Code §§ 218.5, 226, 1194, California Bus. & Prof. Code §§ 17200 *et seq*. and/or other applicable law;

xxix.      An award of attorneys' fees, pursuant to, *inter alia*, the common fund doctrine;

xxx. An award of prejudgment and post-judgment interest;

xxxi.      Injunctive relief enjoined Defendants from continuing the wrongful conduct alleged herein and be required to comply with all applicable laws; and

xxxii.      An award to the Plaintiff and the Class of such other and further legal and equitable relief as the Court deems just and proper.

PLAINTIFF DANIEL FLORES demands a jury trial on all issues in this case.

Dated: January 27, 2026                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *s/ Nadir O. Ahmed*
DAVID MCGLOTHLIN, ESQ.
NADIR O. AHMED, ESQ.
*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC